UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

BAHMAN GROUP,

       *Plaintiff*,

v.

BRADLEY T. SMITH, *in his official capacity as Director of the Office of Foreign Assets Control*, *et al.*,[1]

       *Defendants*.

Civil Action No. 22-3826 (RDM)

### MEMORANDUM OPINION AND ORDER

This matter concerns the Office of Foreign Assets Control's ("OFAC") designation of the Group pursuant to Executive Order 13224 as a Specially Designated Global Terrorist ("SDGT") and OFAC's inclusion of Bahman Group on its List of Specially Designated Nationals and Blocked Persons ("SDN List"). Dkt. 11; Dkt. 18 at 2. Specifically, Plaintiff raises three challenges under the Administrative Procedure Act to OFAC's denial of Bahman Group's delisting petition. Dkt. 11 at 19–22 (Am. Compl. ¶¶ 59–68). The matter is now before the Court on OFAC's Motion for Voluntary Remand, Dkt. 18. For the reasons explained below, the Court will **GRANT** that motion.

Federal courts have considerable discretion in deciding whether to grant an agency's motion for a voluntary remand. A court will "generally grant an agency's motion to remand so

---

[1] The Court automatically substitutes the current Director of the Office of Foreign Assets Control, Bradley Smith, in the case caption. *See* Fed. R. Civ. P. 25(d) (providing that "when a public officer . . . ceases to hold office while the action is pending . . . [t]he officer's successor is automatically substituted as a party").

long as 'the agency intends to take further action with respect to the original agency decision on review.'" *Util. Solid Waste Activities Grp. v. EPA*, 901 F.3d 414, 436 (D.C. Cir. 2018) (quoting *Limnia, Inc. v. Dep't of Energy*, 857 F.3d 379, 386 (D.C. Cir. 2017)); *see also FBME Bank Ltd. v. Lew*, 142 F. Supp. 3d 70, 73 (D.D.C. 2015) ("In general . . . '[w]hen an agency seeks a remand to take further action consistent with correct legal standards, courts should permit such a remand in the absence of apparent or clearly articulated countervailing reasons.'" (quoting *Citizens Against Pellissippi Parkway Extension, Inc. v. Mineta*, 375 F.3d 412, 416 (6th Cir. 2004))). "Remand has the benefit of allowing 'agencies to cure their own mistakes rather than wasting the courts' and the parties' resources reviewing a record that both sides acknowledge to be incorrect or incomplete.'" *Util. Solid Waste*, 901 F.3d at 436 (quoting *Ethyl Corp. v. Browner*, 989 F.2d 522, 524 (D.C. Cir. 1993)). "Voluntary remand is typically appropriate '(i) when new evidence becomes available after an agency's original decision was rendered,' . . . 'or (ii) whe[n] "intervening events outside of the agency's control" may affect the validity of an agency's actions.'" *FBME Bank Ltd.*, 142 F. Supp. 3d at 73 (quoting *Carpenters Indus. Council v. Salazar*, 734 F. Supp. 2d 126, 132 (D.C. Cir. 2010)). "'[E]ven if there are no intervening events, the agency may request a remand (without confessing error) in order to reconsider its previous position." *Util. Solid Waste*, 901 F.3d at 436 (quoting *SKF USA Inc. v. United States*, 254 F.3d 1022, 1029 (Fed. Cir. 2001)).

      OFAC "does not concede error," but, rather, seeks a remand "in order to afford it an opportunity to (1) consider new, relevant information that the agency presently has before it; (2) investigate this new information further—including by issuing a further questionnaire that will afford Plaintiff, in turn, an opportunity to provide additional information to OFAC regarding the nature of its relationships with certain subsidiary entities; and (3) at the conclusion of this

process, issue a new final decision that will both account for the results of the agency's additional investigation and address the asserted deficiencies alleged by Plaintiff." Dkt. 18 at 1. These objectives fall squarely within the type of circumstances that justify voluntary remands. Not only does OFAC represent that it "recently obtained new evidence that is relevant to whether Plaintiff meets the criteria for designation under EO 13224," but there is also reason to believe that OFAC may acquire additional relevant information from Plaintiff in its responses to the questionnaire (or questionnaires) the office seeks to propound. *Id.* at 5. In addition, OFAC represents that it will "take the results of its further investigation into account in reconsidering its prior decision." *Id.* at 6. Those representations are sufficient, and Plaintiff is incorrect in insisting that OFAC must also concede error to obtain a voluntary remand. *See* Dkt. 19 at 9; *Util. Solid Waste*, 901 F.3d at 436.

      The Court must also consider "whether remand would unduly prejudice the non-moving party," *Util. Solid Waste*, 901 F.3d at 436 (citing *FBME Bank Ltd.*, 142 F. Supp. 3d at 73), and whether "the agency's request appears to be frivolous or made in bad faith," *id.* (citing *SKF USA*, 254 F.3d at 1029; *Lutheran Church-Missouri Synod v. FCC*, 141 F.3d 344, 349 (D.C. Cir. 1998)). Plaintiff argues that both exceptions to the usual rule favoring voluntary remand apply here. In Plaintiff's view, "[a]t every turn . . . Defendants have sought to evade judicial review," suggesting that "this do over is just another instance which demonstrates that the Defendants have no intention of rescinding Plaintiff's designation, and will avail themselves of any procedural mechanism available to avoid the reality that the current political environment does not allow them to face: there is no legal basis for Plaintiff to be designated under E.O. 13224." Dkt. 19 at 4. The Court is unpersuaded.

First, Plaintiff argues that the voluntary remand would cause further delay in an already years-long battle to get delisted.  Dkt. 19 at 12–15.  Although the Court is sympathetic to the frustration that can arise from lengthy proceedings, lengthy proceedings, Plaintiff has failed to show that OFAC acted in bad faith in any of those past proceedings or, more generally, how those past proceedings bear on whether this remand—which is all that is now at issue—would cause any undue prejudice.  Notably, OFAC has offered an expeditious timeline for proceedings on remand, which reflects the office's good faith in seeking the voluntary remand and which will, in addition, ensure that the remand does not unduly prejudice Plaintiff.  OFAC commits to "issue the new questionnaire to Plaintiff within 14 days of the issuance of a remand order;" it proposes "afford[ing] Plaintiff 45 days from issuance of the questionnaire to either respond, request an extension of time in which to respond, or inform OFAC that it does not intend to respond;" and, although OFAC "reserves the right[] to issue subsequent questionnaire(s) seeking clarification or posing further questions[,] [it] commits to issuing no more than three questionnaires total, and to providing Plaintiff with at least 45 days to respond at each potential iteration of this investigative process."  Dkt. 18 at 7.  When that process concludes, unless the parties engage in Terms of Removal negotiations, "OFAC likewise commits to promptly issuing a new final decision on Plaintiff's delisting petition, and specifically to do so within 90 days."  *Id.* at 7, 8 n.2.

It is true that OFAC does not specify a firm end date for the remand, but the Court is persuaded that the proposed schedule is sufficiently detailed and expeditious to protect Plaintiff from undue delay.  It is possible that this remand process will provide Plaintiff the relief it seeks and that it will do so long before the Court would be able to adjudicate the case on the merits and the office would be able to issue a decision, if appropriate, following an involuntary remand.

There is, of course, no guarantee that the agency will change its delisting denial, but there is also no guarantee that the Court will grant Plaintiff the relief it seeks in this litigation.

Second, Plaintiff argues that OFAC is acting in bad faith.  But OFAC has offered substantial and legitimate reasons for a voluntary remand, leaving Plaintiff to argue that those reasons are pretextual and that OFAC's actual design is "to avoid judicial scrutiny of its actions targeting Plaintiff."  Dkt. 19 at 19.  Plaintiff's allegations are unsupported and too speculative to withstand scrutiny.  To start, Plaintiff complains that OFAC's motion is untimely because it comes sixteen months after OFAC's denial decision.  Dkt. 19 at 4, 19.  But, ten of those months passed before Plaintiff filed suit on December 27, 2022, Dkt. 1, and Plaintiff did not file its amended complaint until June 1, 2023, Dkt. 11, only three months before OFAC moved for a voluntary remand on August 25, 2023, Dkt. 18.  OFAC's timing does not reflect a strategy of delay.

Plaintiff also claims that "[t]here is no indication from [OFAC] . . . that [the referenced] new, unspecified evidence bears on the legal questions presented in this litigation, such as whether . . . OFAC can designate Plaintiff under E.O. 13224 for the conduct of its purported subsidiaries."  Dkt. 19 at 16.  But that contention ignores OFAC's representation that it "recently obtained new evidence that is relevant to whether Plaintiff meets the criteria for designation under EO 13224."  Dkt. 18 at 5.  Applying the presumption of good faith, the Court accepts OFAC's representation and will not require an *ex parte*, *in camera* submission to confirm the truth of that representation; the Court has no reason to doubt counsel's veracity.

Finally, Plaintiff argues that evidence of OFAC's bad faith can be found in footnote 2 of OFAC's opening brief, where it refers to the *possibility* that it might "attempt to negotiate a Terms of Removal with Plaintiff," Dkt. 18 at 8 n.2, even though counsel for OFAC allegedly told

counsel for Plaintiff that "a Terms of Removal Agreement [was] not on the table and would *not* be a possible outcome of a reopened administrative matter," Dkt. 19 at 22.  But, as OFAC explains in its reply brief, the fact that the office was not at that time "willing to undertake any negotiations related to a potential Terms of Removal agreement," does not mean that it has (or would) "categorically" exclude the *possibility* of reaching such an agreement in the future, "regardless of what information Plaintiff might provide to OFAC" on remand.  Dkt. 21 at 18.  To the contrary, OFAC seeks "to issue a new questionnaire to Plaintiff for the *express purpose* of affording it an opportunity to provide additional information," which *might* affect the outcome of the remand.  *Id.*  OFAC offers no guarantees, but it remains open to persuasion, and that is all that is required.

The Court, accordingly, concludes that a voluntary remand is warranted.  Given Plaintiff's concern, however, that the proceedings on remand might proliferate, resulting in undue delay and precluding judicial review, the Court will retain jurisdiction over the matter while on remand and will require the parties to file a joint status report in six months.  If Plaintiff encounters delay that exceeds that anticipated in OFAC's motion, Plaintiff can seek appropriate relief from the Court.

## CONCLUSION

For the foregoing reasons, Defendants' Motion for Voluntary Remand, Dkt. 18, is **GRANTED**.  OFAC shall issue its new questionnaire to Plaintiff within 14 days of this order, and it shall issue its new final decision on Plaintiff's delisting petition within 90 days of (as applicable) either (1) the return date of Plaintiff's response to the final questionnaire that OFAC issues; (2) the date on which Plaintiff informs OFAC it does not intend to respond to any

questionnaire; or (3) in the event that Plaintiff elects not to respond or to inform OFAC that it will not respond, the date which is 45 days from OFAC's issuance of its new questionnaire. The parties shall submit a joint status report on or before May 21, 2024, unless OFAC issues its final decision before that date. This action is hereby **STAYED** pending final agency action on remand.

    **SO ORDERED**.

/s/ Randolph D. Moss<br>
RANDOLPH D. MOSS<br>
United States District Judge

Date: November 26, 2023